## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CATHY SASSCER,** | : | **No. 3:10cv464** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES D. DONNELLY, and** | : | |
| **DOES 1-10, inclusive,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court is Plaintiff Cathy Sasscer's motion for summary judgment.
Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of dealings over a debt owed by plaintiff.  Plaintiff alleges
that Defendants violated her rights under the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. § 1692, and related state laws.  Plaintiff, a resident of Hawley,
Pennsylvania, incurred a financial obligation to Skylands Community Bank ("Bank")
in August 2007.  (Plaintiff's Statement of Undisputed Material Facts (Doc. 19)
(hereinafter "Plaintiff's Statement") at ¶¶ 1, 4-5).  Plaintiff contends she incurred this
debt when she purchased an automobile from Trade Zone Auto Sales in
Hackettstown, New Jersey.  (Id. at ¶ 5).  She financed her purchase through a
promissary note executed with the Bank.  (Id. at ¶ 6).

Plaintiff subsequently went into arrears on her payments to the bank and the

creditor repossessed the automobile and sold it at auction.  (Id. at ¶¶ 7-8).

Defendant James D. Donnelly, a debt collector as defined by 15 U.S.C. § 1692a(6),

thereafter contracted with the creditor to collect the debt.  (Id. at ¶ 9; Defendant's

Counterstatement of Material Facts (Doc. 21) (hereinafter "Defendant's Statement")

at ¶ 9).

On October 22, 2009, Donnelly sent plaintiff a demand letter seeking

$3,906.51, which was alleged due on her account with the Bank.  (Plaintiff's

Statement at ¶ 10).  The letter contained language stating that plaintiff could dispute

the debt.  (Id. ¶ 11).  The parties disagree about whether the letter also stated that

plaintiff could request verification of the debt.  (Id. at ¶ 11; Defendant's Statement at

¶ 11).  On November 17, 2009, plaintiff sent defendant a letter disputing the debt.

(Plaintiff's Statement at ¶ 12).  Defendant sent plaintiff a letter in response on

November 20, 2009.  (Id. at ¶ 13).  The letter enclosed a copy of the original

promissary note for $20,000 between plaintiff and Skylands Bank.  (Id. at ¶ 15).  The

letter did not mention the previous $3,906.51 demand, did not explain how the

amount claimed had been calculated, and did not confirm the amount the creditor

claimed was due and owing on the account.  (Id. at ¶ 14).  The letter stated in bold

letters that "**THIS IS AN ATTEMPT TO COLLECT A DEBT**."  (Id. at ¶ 16).

Plaintiff responded to this letter with another letter.  (Id. at ¶ 17).  This letter,

dated November 25, 2009, asked for information on the debt and the loan.  (Id. at ¶

17).  The parties dispute whether the letter demanded proof and verification of the

debt.  (Id. at ¶ 17; Defendant's Statement at ¶ 17).  Plaintiff insists that the document

served that purpose, but defendant argues that plaintiff simply asked for  information

on the sale of the vehicle and information from the bank about the amount paid for

the truck.  (Plaintiff's Statement at ¶ 17; Defendant's Statement at ¶ 17).  Defendant

sent plaintiff a letter in response on January 6, 2010.  (Plaintiff's Statement at ¶ 18).

The letter contained plaintiff's loan history on the account.  (Id.).  Plaintiff insists that

the loan history establishes that $1,631.41 remained on the account, a fact which

defendant disputes.  (Id.; Defendant's Statement at ¶ 18).

On December 11, 2009, defendant filed a lawsuit on behalf of Sklyands Bank

in the Gloucester County, New Jersey Superior Court.  (Id. at ¶ 19).  Plaintiff lived in

Hawley, Pennsylvania at the time.  (Id. at ¶ 20).  Plaintiff signed the promissory note

that formed the basis of the lawsuit in Warren County, New Jersey.  (Id. at ¶ 21).

The promissory note contained a clause allowing the bank to institute suit in Warren

County, Pennsylvania.  (Id. at ¶ 22).  On January 14, 2010, plaintiff moved the

Gloucester County court to transfer the case to Warren County, New Jersey.  (Id. at

¶ 23).  Upon the parties' agreement, the Gloucester County court transferred the

case to Warren County.  (Id. at ¶ 25).  The Gloucester County courthouse is one

hundred fifty miles from plaintiff's home.  (Id. at ¶ 24).  The Warren County

Courthouse is approximately fifty miles from plaintiff's home.  (Id.).

Plaintiff's complaint, filed March 2, 2010, raises four causes of action.  Count I

alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§

1692.  Count II alleges violations of the Pennsylvania Fair Credit Extension

Uniformity Act, 73 P.S. § 2270, through the defendants' violations of the federal

statute.  Count III raises a state-law claim for invasion of privacy by intrusion upon

seclusion.  Count IV claims violations of the Pennsylvania Unfair Trade Practices

and Consumer Protection Law, 73 P.S. § 201-1.

Plaintiff then served the complaint on Defendant Donnelly.  Donnelly filed a

motion to dismiss (Doc. 3), which the court denied.  (Doc. 6).  The parties then

agreed to plaintiff's filing an amended complaint, which stated the same causes of

action.  The parties engaged in discovery.  At the close of discovery, plaintiff filed the

instant motion.  The parties then briefed the issues, bringing the case to its present

posture.

**Jurisdiction**

Plaintiff brings this claim pursuant to the FDCPA, 15 U.S.C. § 1692, *et seq*.

This court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district

courts shall have original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States.").  The court has jurisdiction over plaintiff's

state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the

district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy under Article

II of the United States Constitution.").

4

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).

5

**Discussion**

Plaintiff's motion seeks summary judgment on three of the four counts in her complaint. The court will address each part of the motion in turn.

### A.  Violation of § 1692g(b) of the Fair Debt Collection Practices Act

Plaintiff argues that she should be granted summary judgment on her claim brought pursuant to Section 1692g(b) of the FDCPA.  She contends that undisputed evidence demonstrates that she disputed the debt and demanded verification of the debt and a copy of all relevant papers within thirty days of defendant contacting her. The evidence also demonstrates, plaintiff claims, that defendant did not meet his statutory obligation to cease collection of the debt and mail a verification of the debt to plaintiff before filing suit.  Defendant responds that he provided plaintiff with all of the information she was due when she requested verification of the debt.  Moreover, plaintiff's request for information was ambiguous, and defendant replied as best he could to that request.  Defendant also insists that he did not attempt to resume collecting the debt by filing suit in state court until after he sent plaintiff verification information.  That statement at the bottom of his letter that the communication was "an attempt to collect a debt" is required to be included on such correspondence under federal law and is not prohibited by the statute.

"Congress enacted" the FDCPA "'to eliminate abusive debt collection practices' which 'contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of personal privacy.'"  Wilson v.

Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) (quoting Miller v. Payco-General American Credits, Inc., 943 F.2d 482, 483-84 (4th Cir. 1991)).  The FDCPA aims at "'eliminat[ing] abusive debt collection practices by debt collectors . . . [and] insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Campuzano-Burogs v. Midland Credit Mgmt., 550 F.3d 294, 298 (3d Cir. 2008) (quoting 15 U.S.C. § 1692(e)).  The FDCPA therefore provides means for a debtor to seek information about and dispute the debt.  The act provides, in relevant part, that "[i]f the consumer notifies the debt collector in writing" within thirty days of receiving notice of an attempt to collect a debt that the debt "is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification . . . is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

The question on this claim, then, is whether defendant properly verified the debt pursuant to plaintiff's request, and whether defendant ceased attempting to collect the debt until mailing this verification.  The Third Circuit Court of Appeals has rarely addressed the sufficiency of verification directly.  In Graziano v. Harrison, 950 F.2d 107 (3d Cir. 1991), the one reported Third Circuit case that addresses the adequacy of the verification supplied by a debt collector, the plaintiff sued a debt collector for violation of various provisions of the FDPA, including Section 1692g(b).

When plaintiff requested verification of the debt, defendant "furnished" plaintiff with information that "listed a date different from that on the original notice, and described the services provided as 'E.R. extended Service.'" Id. at 109.  The defendant also "discovered that [plaintiff] owed an additional debt [and] a bill and computer printout for this debt were enclosed with verification of the first debt."  The court concluded that defendant had not violated Section 1692g(b) because "[t]he computer printouts provided to Graziano were sufficient to inform him of the amounts of his debts, the services provided, and the dates on which the debts were incurred" and upheld the district court's grant of summary judgment to defendant on plaintiff's claim. Id. at 113.

The Third Circuit, then, has found sufficient a verification that informs the debtor of  "the amounts of his debts, the services provided to produce those debts," and "the dates on which the debts were incurred." Id.  Other Courts of Appeals have imposed similar standards.  The Fourth Circuit Court of Appeals has concluded that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999). In Chaudry, the court found it sufficient for verification that defendant "forwarded a copy of the bank's computerized summary of [plaintiffs'] loan transactions" that "included a running account of the debt amount, a description of every transaction, and the date on

which the transaction occurred." Id.  The defendant later confirmed by letter the

correctness of other added fees.  Id.  "Nothing more is required," the court

concluded.  Id. See also, Clark v. Capital Credit & Collection Servs., 460 F.3d 1162,

1173-74 (9th Cir. 2006) (adopting the standard of Chaudry as "the minimum" for

verifying the debt, and approving a verification that involved "obtain[ing] information .

. . about the nature and balance of the outstanding bill and provid[ing] [plaintiffs] with

documentary evidence in the form of the itemized statement."); Maynard v. Bryan w.

Cannon, P.C., 401 Fed. Appx. 389, 397 (10 th Cir. ) (holding that the section "is not

intended to give a debtor a detailed accounting of debt to be collected" but instead

that "'verification is intended to eliminate the problem of debt collectors dunning the

wrong person or attempting to collect debts which the consumer has already paid.'")

(quoting Chaudhry, 174 F.3d at 406).  The Court will apply this standard to plaintiff's

motion.

The court finds there is a disputed question of fact about the verification of

debt provided by the defendant.  On October 22, 2009, defendant sent plaintiff a

letter informing her he had been retained by Skylands Community Bank to collect on

a debt in default.  (Exh. D to Defendant's Brief in Opposition to Plaintiff's Motion for

Summary Judgment (Doc. 21) (hereinafter "Defendant's Brief")).  Defendant

informed plaintiff that "this letter is an attempt to collect a debt" and offered her the

opportunity to dispute the debt in writing.  (Id.).  The letter also informed plaintiff that

"unless, within 30 days after receipt of this letter, you dispute the validity of the debt,

or any portion thereof, the debt will be assumed to be valid." (Id.).  If plaintiff did

dispute the debt, defendant informed her, "verification of the debt will be provided to

you in writing, which shall include copies of all papers and judgments, if any." (Id.).

Plaintiff responded on November 17, 2009, stating that she "require[d] verification of

the claimed debt" and that she "dispute[d] every portion of the claim."  (Exh. E to

Defendant's Brief).  Plaintiff requested copies "of the original loan agreement and all

other relevant papers."  (Id.).  On November 20, 2009, defendant responded by

mailing plaintiff a copy of the promissory note from which the debt arose.  (Exh. F to

Id.).  The note disclosed the $20,000 that was financed on the note, the annual

percentage rate on the loan, and the amount and number of payments on the loan.

(Id.).  Defendant also informed plaintiff that "if you have any questions or require any

further information, please feel free to contact me."  (Id.).

On November 25, 2009, plaintiff responded to defendant's November 20, 2009

letter by informing him that she had not received sufficient information.  (See Exh. G

to Defendant's Brief).  She asked for documents "indicating what the truck sold for;

[and] a copy of Skyland's records indicating the amount paid into the truck."  (Id.).  A

copy of the promissory note, plaintiff insisted, "does not prove anything."  (Id.).  She

also complained that defendant had added $1,000 to Skyland's demand, creating a

total claim of around $3,900.  (Id.).  To prove the debt owed, plaintiff insisted,

defendant needed to provide "documented proof that the truck was sold and for an

exact amount that has been paid toward the truck."  (Id.).  She demanded defendant

10

send her that information.  (Id.).

Defendant contends that he responded to plaintiff's letter on December 2,

2009.  This letter contained additional documents designed to meet plaintiff's

demand for verification.  (See Exh. H-1 to Defendant's Brief).  Defendant also

advised plaintiff that the promissory note she signed obligated her to pay attorney's

fees connected to recovery of the collateral.  (Id.).  Defendant allegedly included in

this letter correspondence from the bank to plaintiff dated September 16, 2009

entitled "Notice of Disposition of Collateral 2002 Ford F350 SD." (Exh. H-2).  The

letter informed plaintiff that the truck had been sold.  (Id.).  Plaintiff owed slightly

more than $14,000 on her loan, and had been charged $1,038 for repossession,

storage and disposal fees.  (Id.).  The collateral had been sold for $12,200.  (Id.).

Plaintiff therefore owed $2,916.19.  (Id.).  The letter informed plaintiff that "[y]ou are

responsible for repayment of the DEFICIENCY BALANCE REMAINING[,]" and

warned her that the bank would begin collection efforts if she did not call to discuss

repayment.  (Id.).  Defendant's letter also contained bills from the agency that

repossessed the truck and records of the sale, along with a copy of the promissory

note.  (Exhs. H-3-H-6).  Plaintiff contends that she never received this letter.

(Plaintiff's Affidavit in Support of Motion for Partial Summary Judgment (Doc. 19-4)

at ¶ 13).  According to plaintiff, she next heard from defendant on January 6, 2010.

(Id.).

Plaintiff continued to find the information supplied her unsatisfactory, if she

11

received that information at all.  On January 3, 2009, she wrote defendant

demanding bank "records about payment history and the names of loan officers

allegedly involved with granting the loan you have contacted me about.  (Exh. J to

Defendant's Brief).  She wanted to know "how many payments [the bank] claim[s]

were paid to them and . . . the name official title of each loan officer involved with

granting [the] loan."  (Id.).  Plaintiff asserted that "I am entitled to documentation

about **payment history** and the identities of the parties allegedly involved with

granting a loan to me."  (Id.) (emphasis in original).  Defendant responded by

sending plaintiff a photocopy of the loan history on her account.  (Exh. K to

Defendant's Brief).

At the least, there is a disputed question of fact as to the adequacy of this

verification.  The parties agree that the defendant provided plaintiff with some

information on the validity of the debt.  The defendant provided plaintiff with a copy

of the loan contract.  The parties disagree about whether plaintiff actually received

much of the information defendant claims he provided.  While the information

allegedly provided by defendant in his December 2, 2009 letter may well have been

sufficient to verify the debt, there is a dispute of fact as to whether plaintiff ever

received that information.  Similarly, there is a factual dispute about whether

defendant filed suit in state court before verifying the debt.  If defendant mailed the

disputed second letter to plaintiff before filing suit, a jury could conclude that he

verified the debt before filing the state court action.  Since a question of fact exists

over whether defendant actually verified the debt and then filed suit, the court will deny plaintiff's motion on this point.

### B.  Violation of § 1692i(a)(2) of the Fair Debt Collection Practices Act

Plaintiff also contends she should be granted summary judgment on her claim that defendant violated Section 1692i(a)(2) of the FDCPA by filing suit in Gloucester County, New Jersey instead of Warren County, New Jersey.  In filing the action in Gloucester County, the defendant violated a requirement in the FDCPA that any lawsuit to collect the debt be filed either in the county where the debtor resides or in the county where the parties signed the instrument.  Defendant argues that there is a single judicial district in New Jersey; filing the case in Gloucester County therefore was not in violation of the law.

Evidence in the record indicates that defendant filed a four-count complaint in the Superior Court of New Jersey, Law Division, Special Civil Part, in Gloucester County.  (Exh. I to Defendant's Brief).  Defendant sought payment of the $3,906.51 debt at issue in this case.  (Id.).  Though the lawsuit is dated December 2, 2009, the parties agree that the defendant actually filed the action on December 11, 2009.  (Plaintiff's Statement at ¶ 19).  As explained above, plaintiff filed a motion to transfer the case to a court in Warren County, New Jersey.  In January 2010, the parties agreed to this transfer.  The Warren County court was much closer to plaintiff's Pennsylvania home than the Gloucester County court.

Section 1692i(a) of the FDCPA provides that in a case not involving real

13

property "any debt collector who brings a legal action on a debt against any consumer shall . . . bring such action only in the judicial district or similar legal entity–(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action."  15 U.S.C. ¶ 1692i(a)(2)(A-B).  Congress adopted this provision to address "the 'problem of forum abuse, an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear,' hence permitting the debt collector to obtain a default judgment."  Hess v. Cohen & Slamowitz, LLP, ---- F.3d ----, 2011 WL 612887 at *2 (2d Cir. 2011, February 23, 2011) (quoting S.Rep. No. 95-382, at 5 (1977)).

The federal courts which have addressed the issue of the meaning of "judicial district" in this statue have concluded that "the term 'judicial district,' as applied to state-court debt collection actions, must be defined in accordance with the judicial system of the state in which the debt collection action is brought."  Hess, 2011 WL 612887, at *4; see also, Newsom v. Friedman, 76 F.3d 813 (7th Cir. 1996) (determining whether venue was proper based on Illinois state law); Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1515 (9th Cir. 1994) (determining proper venue based on Arizona law on transfer between county districts).  Defendant argues that New Jersey has a unified court system consisting of a single statewide trial court. As such, he contends, his filing the case in Gloucester County was appropriate.

"Under the New Jersey Constitution, our trial courts are organized by county."

14

Rutgers-The State University of New Jersey v. Fogel, 958 A.2d 1014, 1021 (N.J. Super. Ct. 2008).  That Constitution provides that "[t]he Superior Court shall at all times consist of at least two judges who shall be assigned to sit in each of the counties of the State."  N.J.S.A. CONST. ART. 6, § 3, ¶ 1.  Moreover, the New Jersey Rules of Court provide that for actions not involving real property "[v]enue shall be laid by the plaintiff in Superior Court actions . . . (3) . . . in the *county* in which the cause of action arose, or in which any party to the action resides at the time of its commencement, or in which the summons was served on a nonresident defendant." N.J. COURT RULES, R. 4:3-2(a)(3) (emphasis added).  The rules also allow for changes of venue from one county to the next.  For instance, "[a]t any time prior to the filing and service of the first answer by any defendant to the complaint, plaintiff may apply ex parte for an order changing venue to any other *county* in which venue may be properly laid."  N.J. COURT RULES, R. 4:3-3(c) (emphasis added).  Thus, in New Jersey "the basic 'judicial district' within the meaning of section 1692i is the county."  Fogel, 958 A.2d 1021.  See also, Fox, 15 F.3d at 1515 (finding that "[w]e have no difficulty in concluding that the two counties are different venues under the FDCPA where the state has provided a formal transfer mechanism . . . between courts in the two counties.").[1]  As there is no dispute that defendant did not file suit in the county where plaintiff resided or where she signed the loan documents,

---

[1]The weakness of defendant's argument on this matter is underscored by the fact that the state-court case against plaintiff was transferred from the Superior Court in one New Jersey county to the Superior Court in another county.

summary judgment is appropriate for plaintiff on this claim..

### C.  Violation of Pennsylvania Law

Finally, plaintiff seeks summary judgment on her claims brought under the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.4(a), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1.  She contends that any violation of the FDCPA is *per se* a violation of the these two statutes.  Defendant argues that plaintiff has not established any violation of the FDCPA, and summary judgment is therefore inappropriate on these claims.  The court will grant the summary judgment motion in part and deny it in part.  The court will grant the motion as it relates to plaintiff's claims brought under Section 1692i of the FDCPA and deny the motion as it relates to plaintiff's claims brought under Section 1692g of the FDCPA.

### Conclusion

For the reasons stated above, the court will grant plaintiff's motion in part and deny the motion in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CATHY SASSCER, | : | No. 3:10cv464 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES D. DONNELLY, and | : | |
| DOES 1-10, inclusive, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 20th day of April 2011, plaintiff's motion for summary judgment (Doc. 19) is hereby **GRANTED** in part and **DENIED** in part, as follows:

1) The motion is **GRANTED** with respect to plaintiff's claims brought pursuant to 15 U.S.C. § 1692i;

2) The motion is **GRANTED** with respect to plaintiff's state-law statutory claims that relate to her claims brought pursuant to 15 U.S.C. § 1692i;

3) The motion is **DENIED** with respect to plaintiff's claims brought pursuant to 15 U.S.C. § 1692g; and

4) The motion is **DENIED** with respect to plaintiff's state-law statutory claims that relate to her claims brought pursuant to 15 U.S.C. § 1692g.

**BY THE COURT:**

17

s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**